# EXHIBIT D



**ACCOUNT CONTROL AGREEMENT**

**among**

Power Forward Communities, Inc.**, as PLEDGOR**

United States Environmental Protection Agency**, as SECURED PARTY**

**and**

**CITIBANK, N.A., as BANK**

**Dated as of November 1, 2024**

**THIS ACCOUNT CONTROL AGREEMENT** (this "**Agreement**"), dated as of November 1, 2024, by and among Power Forward Communities, Inc, a Delaware Nonstock Nonprofit corporation (the "**Pledgor**"), the United States Environmental Protection Agency, an agency of the United States Government (the "**Secured Party**") and Citibank, N.A., a national banking association organized and existing under the laws of the United States of America ("Citibank") and acting through its Agency & Trust business solely in its capacity as bank under this Agreement, and any successors appointed pursuant to the terms hereof (Citibank in such capacity, the "**Bank**").

**WHEREAS,** the Pledgor and the Secured Party have entered into that certain federal financial assistance agreement, as identified in Addendum 1, (the "**Grant Agreement**") pursuant to which the Pledgor has granted the Secured Party a security interest in the accounts as identified in Addendum 1 established and maintained by the Bank for the Pledgor (the "**Accounts**").

**WHEREAS,** the Bank has been designated and authorized to act as a financial agent of the United States pursuant to the authority of the U.S. Department of the Treasury under 12 U.S.C. §§ 90 and 265.

**WHEREAS,** the parties wish that the Bank enter into this Agreement in order to provide for the "control" (as defined in Section 9-104(a) of the Uniform Commercial Code in effect in the State of New York ("**UCC**"), in the case of a deposit account, or Section 8-106 of the UCC, in the case of a security account) of the accounts as a means to perfect the security interest of the Secured Party.

**WHEREAS,** the Pledgor and the Secured Party have agreed that the terms and conditions entitled "Deposit Account at Financial Agent" in the Grant Agreement indicate the conditions under which the Secured Party may exercise its right of control herein, and such conditions will be defined as "default" for the purposes of this Agreement.

**WHEREAS**, capitalized terms used herein without definition and that are defined in Article 8 or Article 9 of the UCC as adopted in the State of New York shall have the respective meanings set forth therein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which is hereby irrevocably acknowledged, the parties hereto agree as follows:

1.    **The Accounts.**  The Pledgor and the Bank represent and warrant to, and agree with the Secured Party that:

(a)    The Bank maintains the Accounts for the Pledgor, and all property (including, without limitation, all funds and financial assets) held by the Bank for the accounts of the Pledgor are, and will continue to be, credited to the Accounts in accordance with instructions given by the Pledgor (unless otherwise provided herein).

(b)    To the extent that cash is credited to the Accounts, the Accounts are a deposit account; and to the extent that financial assets (other than cash) are credited to the Accounts, the Accounts are a securities account.  The Bank is (i) the bank with which the Accounts are maintained and (ii) the securities intermediary with respect to financial assets held in the Accounts.  The Pledgor is (A) the Bank's customer with respect to the Accounts and (B) the entitlement holder with respect to all financial assets credited from time to time to the Accounts.

(c)     Notwithstanding any other agreement to the contrary, the Bank's jurisdiction with respect to the Accounts for purposes of the UCC is, and will continue to be for so long as the Secured Party's security interest shall be in effect, the State of New York.

(d)     The Pledgor and the Bank do not know of any claim to or interest in the Accounts or any property (including, without limitation, funds and financial assets) credited to the Accounts, except for claims and interests of the parties referred to in this Agreement.

## 2.     <u>Control over Accounts</u>.

The Bank shall comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts including, without limitation, directions to distribute proceeds of any such transfer or redemption of interest or dividends on financial assets in the Accounts, substantially in the form attached hereto as <u>Exhibit B</u> ("**Account Direction**"), originated by the Pledgor, until the time that that Bank receives a notice, substantially in the form attached hereto as <u>Exhibit A</u> (a "**Notice of Exclusive Control**") from the Secured Party that the Secured Party is exercising its right to exclusive control over an Account, and after such time that the Bank receives a Notice of Exclusive Control, the Secured Party for such Account, without further consent by the Pledgor.

## 3.     <u>Priority of Secured Party's Security Interest</u>.     The Bank subordinates in favor of the Secured Party any interest, lien or right of setoff it may have, now or in the future, against the Accounts or assets in the Accounts; *provided; however*, that, subject to the foregoing, the Bank may set off all amounts due to it in respect of its fees and expenses (including, without limitation, the payment of any legal fees or expenses) or any amounts payable pursuant to Section 4 hereof.

## 4.     <u>Investment of Funds</u>.

(a)     The Bank shall deposit the assets in non-interest bearing Accounts and invest the assets in the Accounts consistent with the instructions provided by the Pledgor, in Addendum 1. The Pledgor's instructions will be in accordance with the Grant Agreement, provided that the Bank is not responsible for verifying whether the Pledgor's instructions are in compliance with the Grant Agreement. The Bank shall invest such assets in the Accounts on the date of deposit provided that such assets are received on or before 11:00 a.m. New York City time.  Any assets received after 11:00 a.m. New York City time shall be treated as if received on the following Business Day. For purposes of this Agreement, "**Business Day**" shall mean any day that the Bank is open for business.

(b)     The Bank is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required under this Agreement. The Bank shall have no responsibility or liability for any loss in the value of any investment made pursuant to this Agreement, or for any loss, cost or penalty resulting from any sale or liquidation of the assets in the Account.  The Bank is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity.  The Bank does not have a duty nor will it undertake any duty to provide investment advice.

(c)     The Bank shall transfer any earnings or proceeds received on or distributions of earnings or proceeds from the assets in the Accounts to the Program Income from Operations Account on a monthly basis.



5.    **Tax Matters.**

(a)    The Pledgor and the Secured Party agree that, unless and until the Grant Agreement is terminated, any earnings or proceeds received on or distributions of earnings or proceeds from the assets in the Accounts shall be treated as the income of the Pledgor and shall be reported on an annual basis on United States Internal Revenue Service ("**IRS**") Form 1099-DIV, as required pursuant to the Internal Revenue Code of 1986, as amended (the "**Code**") and the regulations thereunder. Principal payments are not reportable to any payee hereunder. No earnings or proceeds received on or distributions of earnings or proceeds from the assets in the Accounts, or principal payments from the Accounts, are reportable to the Secured Party. The Pledgor, the Secured Party and the Bank agree that the Bank will not be responsible for providing tax reporting and withholding for payments that are for compensation for services performed by an employee or independent contractor.

(b)    The Pledgor and the Secured Party shall upon the execution of this Agreement provide the Bank with a duly completed and properly executed IRS Form W-9 or applicable IRS Form W-8, in the case of a non-U.S. person, for each payee, together with any other documentation and information requested by the Bank in connection with the Bank's tax reporting obligations under the Code and the regulations thereunder.  With respect to the Bank's tax reporting obligations under the Code, the Foreign Account Tax Compliance Act and the Foreign Investment in Real Property Tax Act and any other applicable law or regulation, the Pledgor and the Secured Party understand, that, in the event valid U.S. tax forms or other required supporting documentation are not provided to the Bank, the Bank may be required to withhold tax from the assets in the Accounts and report account information on any earnings, proceeds or distributions from the assets in the Accounts.

(c)    Should the Bank become liable for the payment of taxes, including withholding taxes relating to any funds, including interest and penalties thereon, held by it pursuant to this Agreement or any payment made hereunder, the Pledgor agrees to indemnify and hold the Bank harmless pursuant to Section 7(b) hereof from any liability or obligation on account of taxes, assessments, interest, penalties, expenses and other governmental charges that may be assessed or asserted against the Bank, provided that such liability shall not be satisfied by assets in the Accounts. If the Pledgor fails to indemnify the Bank for such taxes, the Bank will notify the Secured Party.

(d)    The Bank's rights under this Section 5 shall survive the termination of this Agreement or the resignation or removal of the Bank.

6.    **Concerning the Bank.**

(a)    <u>Bank Duties</u>. Each of the Pledgor and the Secured Party acknowledges and agrees that (i) the duties, responsibilities and obligations of the Bank shall be limited to those expressly set forth in this Agreement, each of which is administrative or ministerial (and shall not be construed to be fiduciary in nature), and no duties, responsibilities or obligations shall be inferred or implied, (ii) the Bank shall not be responsible for any of the agreements referred to or described herein (including, without limitation, the Grant Agreement and any defined term therein not otherwise defined in this Agreement), or for determining or compelling compliance therewith, and shall not otherwise be bound thereby, and (iii) the Bank shall not be required to expend or risk any of its own funds to satisfy payments from the Accounts hereunder.



(b)    <u>Liability of Bank</u>.  The Bank shall not be liable for any damage, loss or injury resulting from any action taken or omitted in the absence of gross negligence or willful misconduct (as finally adjudicated by a court of competent jurisdiction).  In no event shall the Bank be liable for indirect, incidental, consequential, punitive or special losses or damages (including but not limited to lost profits), regardless of the form of action and whether or not any such losses or damages were foreseeable or contemplated.  The Bank shall be entitled to rely upon any instruction, notice, request or other instrument delivered to it without being required to determine the authenticity or validity thereof, or the truth or accuracy of any information stated therein.  The Bank may act in reliance upon any signature believed by it to be genuine (including any signature affixed by DocuSign) and may assume that any person purporting to make any statement, execute any document, or send any instruction in connection with the provisions hereof has been duly authorized to do so.  The Bank may consult with counsel satisfactory to it, and the opinion or advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it in good faith and in accordance with the opinion and advice of such counsel.  The Bank may perform any and all of its duties through its agents, representatives, attorneys, custodians and/or nominees.  The Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

(c)    <u>Reliance on Orders</u>.  The Bank is authorized to comply with final orders issued or process entered by any court with respect to the assets in the Accounts, without determination by the Bank of such court's jurisdiction in the matter.  If any portion of the assets in the Accounts are at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Bank is authorized to rely upon and comply with any such order, writ, judgment or decree which it is advised is binding upon it without the need for appeal or other action; and if the Bank complies with any such order, writ, judgment or decree, it shall not be liable to the Pledgor or the Secured Party or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

(d)    <u>Erroneous Payments</u>.  If the Bank releases any funds (including but not limited to the assets in the Accounts or any portion of it) to the Pledgor or the Secured Party and subsequently determines (in its absolute discretion) that the payment (or any portion of it) was made in error, the Pledgor or the Secured Party, as applicable, shall upon notice promptly refund the erroneous payment, and none of the obligations of the Pledgor or the Secured Party, as applicable, or the remedies of the Bank will be affected by any act, omission, matter or thing (including, without limitation, any obligation pursuant to which an erroneous payment is made) which, but for this provision, would reduce, release, preclude or prejudice any such obligation or remedy (whether or not known by the Bank, the Pledgor or the Secured Party). Each of the Pledgor and the Secured Party agrees not to assert discharge for value, bona fide payee, or any similar doctrine as a defense to recovery of any erroneous payment by the Bank.

**7.    <u>Compensation, Expense Reimbursement and Indemnification</u>.**

(a)    <u>Compensation</u>. The Bank's compensation shall be as specified in <u>Schedule A</u>.

citi

(b)    Indemnification. The Pledgor covenants and agrees to indemnify the Bank and its employees, officers, directors, affiliates, and agents (each, an "**Indemnified Party**") for, hold each Indemnified Party harmless from, and defend each Indemnified Party against, any and all claims, losses, actions, liabilities, costs, damages and expenses of any nature incurred by any Indemnified Party, arising out of or in connection with this Agreement or with the administration of its duties hereunder, including, but not limited to, attorney's fees, costs and expenses, except to the extent such loss, liability, damage, cost or expense shall have been finally adjudicated by a court of competent jurisdiction to have resulted solely from the Indemnified Party's own gross negligence or willful misconduct, provided that such liability shall not be satisfied by assets in the Accounts. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement and the resignation or removal of the Bank. If the Pledgor fails to indemnify the Bank pursuant to this Section 7(b), the Bank shall notify the Secured Party.

**8.    Statements, Confirmations and Notices of Adverse Claims.**  The Bank will send copies of all statements and confirmations for the Accounts simultaneously to the Pledgor and the Secured Party.  The Bank shall be deemed to have delivered statements and confirmations if such statements and confirmations are available on one or more of the Bank systems to deliver electronic media.  The Bank will use reasonable efforts promptly to notify the Secured Party and the Pledgor if any other person claims that it has a property interest in the Accounts or any financial asset in the Accounts.

**9.    Entire Agreement; Exclusive Benefit.**  This Agreement constitutes the entire agreement between the parties and sets forth in its entirety the obligations and duties of the Bank with respect to the assets in the Accounts.  This Agreement is for the exclusive benefit of the parties to this Agreement and their respective permitted successors, and shall not be deemed to give, either expressly or implicitly, any legal or equitable right, remedy, or claim to any other entity or person whatsoever.  No party may assign any of its rights or obligations under this Agreement without the prior written consent of the other parties.

**10.    Resignation and Removal.** The Bank may be removed only by the U.S. Department of the Treasury.

**11.    Governing Law.** This Agreement is governed by and shall be construed and interpreted in accordance with federal law of the United States, except where there is no applicable federal law, in accordance with the laws of the State of New York, without giving effect to the conflict of laws principles thereof.

**12.    Representations and Warranties.**

(a)    Each of the Pledgor and the Secured Party represents and warrants that it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder; and this Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws affecting the enforcement of creditors' rights and subject to general equity principles.

(b)    Each of the Pledgor and the Secured Party represents that neither it nor any of its parents or subsidiaries, or any of their respective directors, officers, or employees, or to the knowledge of the Pledgor and the Secured Party, the affiliates of the Pledgor, the Secured Party or any of its subsidiaries, will, directly or indirectly, use any part of any proceeds or lend, contribute,



or otherwise make available such assets in the Accounts in any manner that would result in a violation by any person of economic, trade, or financial sanctions, requirements, or embargoes imposed, administered, or enforced from time to time by the United States (including, without limitation, the Office of Foreign Assets Control of the U.S. Department of the Treasury and the U.S. Department of State), the United Kingdom (including, without limitation, His Majesty's Treasury), the European Union and any EU member state, the United Nations Security Council, and any other relevant sanctions authority.

13.    <u>**Notices; Instructions.**</u>

(a)    Any notice or instruction hereunder shall be in writing in English, and may be sent by (i) secure file transfer or (ii) electronic mail with a scanned attachment thereto of an executed notice or instruction, and shall be effective upon actual receipt by the Bank in accordance with the terms hereof. Any notice or instruction must be executed (which execution may be manual or affixed by DocuSign) by an authorized person of the Pledgor or the Secured Party, as applicable (the person(s) so designated from time to time, the "**Authorized Persons**"). Each of the applicable persons designated on <u>Schedule B</u> and <u>Schedule C</u> attached hereto have been duly appointed to act as Authorized Persons hereunder and individually have full power and authority to execute any notices or instructions, to amend, modify or waive any provisions of this Agreement, and to take any and all other actions permitted under this Agreement, all without further consent or direction from, or notice to, it or any other party. Any notice or instruction must be originated from a corporate or government domain. Any change in designation of Authorized Persons shall be provided by written notice, signed by an Authorized Person, and actually received and acknowledged by the Bank. Any communication from the Bank that the Bank deems to contain confidential, proprietary, and/or sensitive information shall be encrypted in accordance with the Bank's internal procedures.

(b)    Each of the Pledgor and the Secured Party understands and agrees that the Bank cannot determine the identity of the actual sender of any notice or instruction and that the Bank shall be entitled to conclusively presume that notices or instructions that purport to have been sent by an Authorized Person have been sent by such Authorized Person. Each of the Pledgor and the Secured Party agrees: (i) to assume all risks arising out of the use of electronic means (including electronic mail, secure file transfer or such other method or system specified by the Bank as available for use in connection with its services hereunder) to submit instructions to the Bank, including, without limitation, the risk of the Bank acting on unauthorized instructions, and the risk of interception or misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Bank and that there may be more secure methods of transmitting instructions than the method(s) selected by the Pledgor and the Secured Party, as applicable; (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances; and (iv) to notify the Bank immediately upon learning of any compromise or unauthorized use of the security procedures. The Pledgor and the Secured Party agree that the security procedures set forth in Section 13(a) and this Section 13(b) are commercially reasonable.

> If to the Pledgor:
> As provided in Addendum 1
>
> If to the Secured Party:
> The Office of the Greenhouse Gas Reduction Fund,



United States Environmental Protection Agency
Attention: David Widawsky
Telephone: +1 202-566-2215
E-mail: GGRF@epa.gov; widawsky.david@epa.gov

If to the Bank:
Citibank, N.A.
Agency & Trust
388 Greenwich Street
New York, NY 10013
Attn.: Nerlie Delly
Telephone: +1 212-816-6846
E-mail: CitiGGRFFinancialAgent@citi.com

**14.**     **Amendment; Waiver.**   Any amendment of this Agreement shall be binding only if evidenced by a writing signed by each of the parties to this Agreement.   No waiver of any provision hereof shall be effective unless expressed in writing and signed by the party to be charged.

**15.**     **Severability.**    The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision. If any provision of this Agreement is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

**16.**     **Mergers and Conversions.**   Any corporation or entity into which the Bank may be merged or converted or with which it may be consolidated, or any corporation or entity resulting from any merger, conversion or consolidation to which the Bank will be a party, or any corporation or entity succeeding to the business of the Bank will be the successor of the Bank hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.

**17.**     **Termination.**    This Agreement shall terminate upon receipt by the Bank of notice from the Secured Party that its security interest in such Accounts and all assets therein have terminated.   Upon receipt of such notice, the Secured Party shall have no further right to originate instructions with respect to the assets in the Accounts.   The Bank shall, upon payment of all outstanding fees and expenses hereunder, promptly forward any amounts held by the Bank in the Accounts to the Pledgor, and the Bank shall be relieved and discharged of any further responsibilities with respect to its duties hereunder.

**18.**     **Counterparts.**  This Agreement may be executed simultaneously in two or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same agreement. Signatures on counterparts of this Agreement executed and delivered in electronic format (i.e. "pdf") or by other electronic means (including DocuSign) shall be deemed original signatures with all rights accruing thereto except in respect to any non-US entity, whereby originals may be required.

**[Remainder of Page Left Intentionally Blank]**



**IN WITNESS WHEREOF,** each of the parties has caused this Agreement to be executed by a duly authorized representative as of the day and year first written above.

**CITIBANK, N.A.,**
as Bank

By: _Nerlie Delly_
       8BE0246B7B634D0...

    Name: Nerlie Delly
    Title: Senior Trust Officer

**Power Forward Communities, Inc.**

By: _William N. Jenkins III_
      06BFC6DA032AF4C4...

    Name: William N. Jenkins III
    Title: Senior Vice President

**United States Environmental Protection Agency**

By: _Phillip K Schindel_
      8474CD72C10743B...

    Name: Phillip Schindel
    Title: EPA Award Official

**EXHIBIT A**

**FORM OF NOTICE OF EXCLUSIVE CONTROL**

VIA EMAIL: cts.spag@citi.com / CitiGGRFFinancialAgent@citi.com

Nerlie Delly
Vice President
Citibank, N.A.
Agency & Trust
388 Greenwich Street
New York, New York 10013

Pursuant to the Account Control Agreement dated [●], 20[●], among Power Forward Communities, Inc. (the "**Pledgor**"), United States Environmental Protection Agency (the "**Secured Party**"), and Citibank, N.A. (the "**Bank**"), we, the Secured Party, hereby instruct the Bank of the following:

The Pledgor and the Secured Party have agreed that the terms and conditions entitled "Deposit Account at Financial Agent" in the Grant Agreement indicate the conditions under which the Secured Party may exercise its right of control herein, and such conditions will be defined as "default" for the purposes of the Account Control Agreement.

As required by the Grant Agreement, the Secured Party has issued a written determination and finding that Pledgor has failed to comply with the terms and conditions of the Grant Agreement, and that noncompliance is substantial such that effective performance of the Grant Agreement is materially impaired or there is adequate evidence of waste, fraud, material misrepresentation of eligibility status, or abuse, and that the Secured Party has initiated action under 2 CFR 200.339 to wholly or partly suspend or terminate the Grant Agreement, as authorized in the terms of the Grant Agreement.

Therefore, the Secured Party hereby notifies you that (i) a default has occurred and is continuing under the Grant Agreement and (ii) from and after the receipt of this notice until you receive further instruction from Secured Party, you are hereby directed to retain and hold all funds in the Account and not to [invest or] disburse the same to any party whatsoever, other than as instructed by the Secured Party.

**United States Environmental Protection Agency**

as Secured Party

By: _____
    Name:
    Title:
    Date:

Exhibit B

**EXHIBIT B**

**FORM OF ACCOUNT DIRECTION (NCIF)**
**Pledgor's UEI Number: G1YAE6AFNDN4**

[Date]

Citibank, N.A.
Agency & Trust
388 Greenwich Street
New York, NY 10013
Attn.: Nerlie Delly
E-mail: cts.spag@citi.com/CitiGGRFFinancialAgent@citi.com

VIA: CitiSFT
RE: Account Control Agreement dated November 1, 2024, among Power Forward Communities, Inc. (the "**Pledgor**"), United States Environmental Protection Agency (the "**Secured Party**"), and Citibank, N.A. (the "**Bank**")

Pursuant to Section 2 of the above referenced Account Control Agreement, the Pledgor hereby instructs the Bank to disburse a total amount of $[●] funds as per below and as per the attached upload file named xxx:

**Check applicable boxes:**

( ) **Internal Transfer within the Bank (intra-entity).**

( ) **Internal Transfer within the Bank (inter-entity).**

( ) **External Transfer outside the Bank (for Predevelopment Activities, Market-Building Activities, and/or Program Administration Activities).**

( ) **External Transfer outside the Bank (for Financial Assistance Activities).**

**If an Internal Transfer within the Bank (intra-entity), check the following applicable boxes:**

( ) **Transfer of $[●] across Pledgor's 'Budget' sub-accounts, as defined in the Grant Agreement.**

( ) **Transfer of $[●] from Pledgor's 'Program Income from Operations' account to Pledgor's 'Budget' sub-account(s), as defined in the Grant Agreement.**

( ) **Transfer of $[●] from Pledgor's 'Reserve' account to Pledgor's 'Program Income from Operations' account, as defined in the Grant Agreement.**

( ) **Transfer of $[●] from Pledgor's 'Budget' sub-account(s) or 'Program Income from Operations' account to 'Reserve' account, as defined in the Grant Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this expenditure is necessary to execute against the EPA-approved workplan. Financing agreements for identified Qualified Projects necessitating the transfer have been*

*reviewed by Recipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

**If an Internal Transfer within the Bank (inter-entity), check the following applicable boxes:**

**( ) Transfer of $[●] from Pledgor's 'Budget' sub-account(s) to 'Financial Assistance Subrecipient' as defined in the Grant Agreement.**

**If an External Transfer outside the Bank (for Predevelopment Activities, Market-Building Activities, and/or Program Administration Activities), check one of the following boxes:**

**( ) Disbursement of $[●] for Predevelopment Activities as defined in the Grant Agreement.**

**( ) Disbursement of $[●] for Market-Building Activities as defined in the Grant Agreement.**

**( ) Disbursement of $[●] for Program Administration Activities as defined in the Grant Agreement.**

**If an External Transfer outside the Bank (for Financial Assistance Activities), check the following applicable boxes:**

**( ) Disbursement of $[●] from Pledgor's 'Budget' sub-account to provide Financial Assistance to Qualified Projects as defined in the Grant Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this expenditure is necessary to execute against the EPA-approved workplan. Financing agreements for identified Qualified Projects necessitating the transfer have been reviewed by Recipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

**( ) Disbursement of $[●] from Pledgor's 'Reserve' account to satisfy a legal obligation to a third party as defined in the Grant Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this transfer is necessary to execute against the EPA-approved workplan and pay a third party pursuant to a financing agreement that has been reviewed by Recipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

Capitalized terms in this instruction letter not otherwise defined shall have the same meaning given to them in the Account Control Agreement.

Signature on this Account Direction executed and delivered in electronic format (i.e. "pdf") or by other electronic means (including DocuSign) shall be deemed original signatures with all rights accruing thereto.

IN WITNESS WHEREOF, the Pledgor has caused this Account Direction to be duly executed and delivered as of the date first written above.

Pledgor:

_____

Authorized Person

**ADDENDUM 1**
**Account Control Agreement**

| | |
|---|---|
| **Date of Account Control Agreement** | November 1, 2024 |
| **Grant Agreement** | Agreement Title: NCIF Application to Create Community Abundance by Decarbonizing America's Households (5G – 84096001) Agreement Date: 8/8/2024 |
| **Pledgor Notice Details** | Attn: William N. Jenkins III Address: 11000 Broken Land Parkway, Columbia, MD 21044 Email: nate@powerforwardcommunities.org |
| **UEI Number** | **G1YAE6AFNDN4** |
| **Tax Identification Number** | 93-2705500 |
| **Citi Deposit Instructions** | Bank: CITIBANK, N.A. ABA: 0210-0008-9 Account Name: Account Number: Ref: |

**Money Market Fund Investment Selection**

| Fund Name | Fund Number | CUSIP |
|---|---|---|
| FS Treasury Instrument Fund Institutional Class (506) | FTIXX | 38142B500 |

**Accounts to Be Established**

| Account Number | Account Name | Initial Deposit Amount |
|---|---|---|
| 14129100 | PFC Market-Building | $0.00 |
| 14129300 | PFC Program Administration | $82,391,087.00 |
| 14129400 | PFC Other Pass-Through Funding | $1,486,962,944.00 |
| 14129600 | PFC Program Income from Operations | $0.00 |
| 14128900 | PFC Financial Assistance | $0.00 |
| 14129000 | PFC Predevelopment | $0.00 |
| 14129500 | PFC Reserves | $0.00 |

**CitiVelocity Reporting Entitlements Request**:

The Pledgor hereby requests that the Bank entitle the following individuals to view-only access to the Bank's client reporting system for all accounts opened under this Account Control Agreement.

Pledgor Client Profile Name: Power Forward Communities, Inc.

| Name | Phone Number | Email |
|------|-------------|-------|
| William N. Jenkins III | (202) 591-8067 | Nate@powerforwardcommunities.org |
| Timothy J. Mayopoulos | (704) 909-9610 | Tim@powerforwardcommunities.org |

The Pledgor hereby acknowledges that all accounts opened under this Account Control Agreement will be entitled to the Bank's client reporting system and made available for view-only access to the following Client Profiles and their associated users:

| Entity | Client Profile Name |
|--------|--------------------|
| Secured Party | U.S. Environmental Protection Agency |

**CitiSFT Entitlements Request**:

Citi makes available the Secure File Transfer (CitiSFT) platform for clients to securely upload Account Directions. The Pledgor hereby requests that the Bank entitle the below individuals with upload only access to CitiSFT:

| Name | Phone Number | Email | Maker, Checker, Maker and Checker |
|------|-------------|-------|-----------------------------------|
| William N. Jenkins III | (202) 591-8067 | Nate@powerforwardcommunities.org | Maker and Checker |
| Timothy J. Mayopoulos | (704) 909-9610 | Tim@powerforwardcommunities.org | Maker and Checker |
| Matthew Foster | (443) 422-9380 | mattfoster@enterprisecommunity.com | Maker and Checker |
| Vidula Joshi | (610) 291-4774 | vidula@powerforwardcommunities.org | Maker |
| Cory Delger | (253) 222-1153 | cdelger@guidehouse.com | Maker |
| Brandon Stebbins | (215) 832-4462 | bstebbins@guiesehouse.com | Maker |

Signed by:

*William N. Jenkins III*

8CBFCDA832AF4C4...

Authorized Signature

William N. Jenkins III

Senior Vice President and COO

## SCHEDULE A

## BANK COMPENSATION

**General compensation**

For the services described in the Account Control Agreement, the Bank shall charge each Pledgor as follows:

| Agency & Trust Services | Fees |
|---|---|
| **Acceptance Fee**<br>This one-time fee covers the acceptance of the appointment, the review of the related Transaction documents submitted in connection with the execution and delivery thereof, setting up of internal controls, and communication with other members of the working group, as necessary. | Waived |
| **Annual Administration Fee**<br>To cover the administrative functions of Citi under the Agreement, including the establishment and maintenance of the account(s), safekeeping of assets, maintenance of the records, execution and administration of the Agreement provisions, and other duties required under the terms of the Agreement. | Waived |
| **Wire Fees** | Waived |
| **Legal Fees**<br>To cover the review of legal documents by Citibank Agency & Trust's outside counsel. | Waived |

The Transaction documents will be governed in accordance with federal law of the United States, except where there is no applicable federal law, in accordance with the laws of the State of New York, without giving effect to the conflict of laws principles thereof, as established in the Agreement and subject to internal approval and satisfactory review of all documentation. All outgoing payments processed by Citi will be made via wire. Account balances invested in an Institutional Money Market Fund will be chosen by the client from a list of providers that Citi will supply. If invested in a Money Market Fund, fund distributors may provide Citi with Shareholder Servicing fees. These fees are discussed in the fund's prospectus, which will be delivered to the client prior to investment. All of Citi's responsibilities will be non-discretionary and Citi will not be required to make any advances of its own funds. Therefore, all services provided by Citi must strictly follow the terms stated in the Agreements or in the written instructions of the authorized parties or third parties authorized to send instructions to Citi.

In accordance with US regulations regarding anti-money laundering and terrorist financing, Federal law requires Citi to obtain, verify and record information that identifies each business or entity that opens an account or establishes a relationship with Citi. What this means for our clients: when a client opens an account or establishes a relationship, we will ask for the client's business name, a street address and a tax identification number that Federal law requires us to obtain. In accordance with the Unlawful Internet Gambling Act (the "Act"), Citibank, N.A. accounts or other Citibank, N.A. facilities in the United States may not be used to process "restricted transactions" as such term is defined in U.S. 31 CFR Section 132.2(y).

## SCHEDULE B

## PLEDGOR AUTHORIZED LIST OF SIGNERS
### (to be provided separately)

Each of the following person(s) is authorized to execute documents and to direct the Bank as to all matters on the Pledgor's behalf.  The Bank may confirm the instructions received by return call to any one of the telephone numbers listed below.

**PLEDGOR**

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:  William N. Jenkins III<br>Title:  Senior Vice President and COO<br>Phone:  (202) 591-8067<br>Email:  Nate@powerforwardcommunities.org | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:  Timothy J. Mayopoulos<br>Title:  President and CEO<br>Phone:  (704) 909-9610<br>Email:  Tim@powerforwardcommunities.org | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

**SCHEDULE C**

**SECURED PARTY AUTHORIZED LIST OF SIGNERS**
**(to be provided separately)**

Each of the following person(s) is authorized to execute documents and to direct the Bank as to all matters on the Secured Party's behalf.  The Bank may confirm the instructions received by return call to any one of the telephone numbers listed below.

**SECURED PARTY**

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 9D71F8DE43FA4A3A9FFFBDF7929A0994 | | Status: Completed |
| Subject: Complete with Docusign: CITI - EPA - PFC - ACA - 11-1-2024 PFC Execution Version.docx | | |
| Source Envelope: | | |
| Document Pages: 18 | Signatures: 4 | Envelope Originator: |
| Certificate Pages: 4 | Initials: 0 | Marion O'Connor |
| AutoNav: Enabled | | 388 Greenwich Street |
| EnvelopeId Stamping: Enabled | | New York, NY  33610 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | marion.oconnor@citi.com |
| | | IP Address: 199.67.131.156 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Marion O'Connor | Location: DocuSign |
|     11/5/2024 2:05:05 PM |     marion.oconnor@citi.com | |
| Security Appliance Status: Connected | Pool: Production Security Appliance | |

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| William N. Jenkins III<br>Nate@powerforwardcommunities.org<br>Senior Vice President and COO<br>Security Level: Email, Account Authentication (None) | *William N. Jenkins III*<br>8CBFCDA832AF4C4...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 108.52.2.23 | Sent: 11/5/2024 2:08:00 PM<br>Viewed: 11/5/2024 3:05:14 PM<br>Signed: 11/5/2024 3:06:43 PM |

**Authentication Details**
Identity Verification Details:
    Claim Name: IP Validation
    Claim Timestamp: 11/5/2024 3:05:07 PM
    Provider Name: OFAC IP Validation
    Result: Passed
    Performed: 11/5/2024 3:05:08 PM
**Electronic Record and Signature Disclosure:**
    Accepted: 11/5/2024 3:05:14 PM
    ID: a47d64ce-88ac-4f7d-899c-7ed4dcc429ad

| | | |
|---|---|---|
| Phillip K Schindel<br>Schindel.Phillip@epa.gov<br>Security Level: Email, Account Authentication (None) | *Phillip K Schindel*<br>8474CD72C10743B...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 161.80.29.68 | Sent: 11/5/2024 3:06:47 PM<br>Viewed: 11/5/2024 3:59:40 PM<br>Signed: 11/5/2024 4:03:09 PM |

**Authentication Details**
Identity Verification Details:
    Claim Name: IP Validation
    Claim Timestamp: 11/5/2024 3:59:31 PM
    Provider Name: OFAC IP Validation
    Result: Passed
    Performed: 11/5/2024 3:59:31 PM
**Electronic Record and Signature Disclosure:**
    Accepted: 11/5/2024 3:59:40 PM
    ID: 8da728ff-16fa-41d1-a61c-36f1a85e1232

| | | |
|---|---|---|
| Nerlie Delly<br>nerlie.delly@citi.com<br>Senior Trust Officer<br>Citi - SSO<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Nerlie Delly*<br>8BE0246B7B634D0...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 199.67.140.42 | Sent: 11/5/2024 4:03:12 PM<br>Viewed: 11/5/2024 4:09:07 PM<br>Signed: 11/5/2024 4:09:13 PM |

**Authentication Details**

| Signer Events | Signature | Timestamp |
|---|---|---|

Identity Verification Details:
    Claim Name: IP Validation
    Claim Timestamp: 11/5/2024 4:08:58 PM
    Provider Name: OFAC IP Validation
    Result: Passed
    Performed: 11/5/2024 4:08:58 PM
**Electronic Record and Signature Disclosure:**
    Accepted: 9/8/2023 5:31:35 PM
    ID: e21e60c3-35f5-42bf-bb28-47d19bc69a79

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

Kathy Tsing-Choy
Tsing-Choy.Kathy@epa.gov
Security Level: Email, Account Authentication
(None)
**COPIED**
Sent: 11/5/2024 4:09:16 PM

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

Evan Hughes
Hughes.Evan@epa.gov
Security Level: Email, Account Authentication
(None)
**COPIED**
Sent: 11/5/2024 4:09:17 PM

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/5/2024 2:08:01 PM |
| Certified Delivered | Security Checked | 11/5/2024 4:09:07 PM |
| Signing Complete | Security Checked | 11/5/2024 4:09:13 PM |
| Completed | Security Checked | 11/5/2024 4:09:18 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure | | |
|---|---|---|

Electronic Record and Signature Disclosure created on 7/14/2020 11:23:20 AM
Parties agreed to: William N. Jenkins III, Phillip K Schindel, Nerlie Delly

Case 1:25-cv-00762-TSC     Document 1-4     Filed 03/14/25     Page 22 of 33

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Citibank, N.A. Agency Trust (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**To withdraw your consent with Citibank, N.A. Agency Trust**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to gregory.t.wheeler@citi.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Citibank, N.A. Agency Trust as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Citibank, N.A. Agency Trust during the course of your relationship with Citibank, N.A. Agency Trust.

## AMENDMENT TO ACCOUNT CONTROL AGREEMENT

This Amendment to the Account Control Agreement (this "**Amendment**"), is entered into as of January 13, 2025 by and among CITIBANK, N.A. (in such capacity, the "**Bank**"), UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (the "**Secured Party**"), and POWER FORWARD COMMUNITIES, INC. (the "**Pledgor**" and together with Bank and Secured Party, collectively, the "**Parties**").

### R E C I T A L S :

A.        Reference is made to that certain Account Control Agreement, dated as of November 1, 2024 (as amended from time to time, the "**ACA**") by and among the Bank, the Secured Party and the Pledgor.  Capitalized terms used herein and not otherwise defined herein shall have the meaning given to such terms in the ACA.

B.        The Parties desire to amend the ACA as set forth herein.

NOW, THEREFORE, in consideration of the premises, the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1) <u>Amendments to ACA</u>.  The ACA is hereby amended as follows:

   a) Section 2 is amended by adding the following proviso to the end of such section:

      "; <u>provided</u> that notwithstanding the foregoing, after the delivery of a Notice of Exclusive Control, Bank shall continue to disburse funds and financial assets associated with financial obligations "properly incurred" by the Pledgor prior to the issuance of, but not in anticipation of, a delivery of a Notice of Exclusive Control, in Pledgor's "Reserve" Account pursuant to Account Directions originated by Pledgor except for any specific funds or financial assets, identified by Secured Party in the applicable Notice of Exclusive Control as not being "properly incurred" by the Pledgor in accordance with 2 CFR 200.343."

   b) Exhibit A (Notice of Exclusive Control) of the ACA is hereby amended and restated in the form attached to this Amendment as <u>Exhibit A</u>.

   c) Exhibit B (Form of Account Direction (NCIF) of the ACA is hereby amended and restated in the form attached to this Amendment as <u>Exhibit B</u>.

2) <u>Counterparts</u>.  This Amendment may be executed in several counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same document. Signatures transmitted by facsimile or e-mail shall be sufficient to bind the Parties to this Amendment.

3) <u>Ratification</u>.  The Parties acknowledge that in all other respects, the provisions of the ACA are hereby reaffirmed and ratified, and shall remain in full force and effect.

4) <u>Conflict</u>.  The Parties agree that in the event of a conflict between the terms and conditions of this Amendment and the ACA (as may have been amended by any prior amendment), the terms and conditions of this Amendment shall govern.


[Remainder of Page Intentionally Blank; Signature Pages to Follow]

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment in their respective signatures, intending that this Amendment shall become effective as of the date first above written.

**POWER FORWARD COMMUNITIES, INC.**

By: _____

Name: Tim Mayopoulos

Title: President and CEO

**CITIBANK, N.A.**

By: _____

Name: Nerlie Delly

Title: Senior Trust Officer

[*Signature Page to Amendment to Account Control Agreement*]

**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY**

By: _Phillip K Schindel_

Name: Phillip K Schindel

Title: Acting Dir, Grants Mgmt & Business Ops Division

[*Signature Page to Amendment to Account Control Agreement*]

EXHIBIT A

**FORM OF NOTICE OF EXCLUSIVE CONTROL**

VIA EMAIL: cts.spag@citi.com / CitiGGRFFinancialAgent@citi.com

Nerlie Delly
Vice President
Citibank, N.A.
Agency & Trust
388 Greenwich Street
New York, New York 10013
[Re. Account # [●]]

Pursuant to the Account Control Agreement dated November 1, 2024, among Power Forward Communities, Inc. (the "**Pledgor**"), United States Environmental Protection Agency (the "**Secured Party**"), and Citibank, N.A. (the "**Bank**"), we hereby instruct you of the following:

The Pledgor and the Secured Party have agreed that the terms and conditions entitled "Deposit Account at Financial Agent" in the Grant Agreement indicate the conditions under which the Secured Party may exercise its right of control herein, and such conditions will be defined as "default" for the purposes of the Account Control Agreement.

As required by the Grant Agreement, the Secured Party has issued a written determination and finding that Pledgor has failed to comply with the terms and conditions of the Grant Agreement, and that noncompliance is substantial such that effective performance of the Grant Agreement is Materially Impaired or there is adequate evidence of Waste, Fraud, or Abuse (as defined in the Grant Agreement) or material misrepresentation of eligibility status, and that the Secured Party has initiated action under 2 CFR 200.339 to wholly or partly suspend or terminate the Grant Agreement, as authorized in the terms of the Grant Agreement.

Therefore, the Secured Party hereby notifies you that (i) a default has occurred and is continuing under the Grant Agreement and (ii) from and after the receipt of this notice until you receive further instruction from Secured Party, you are hereby directed to retain and hold all funds in the Account or Accounts named in this Notice and not to [invest or] disburse the same to any party whatsoever, other than as instructed by the Secured Party. Notwithstanding the foregoing, Bank shall continue to disburse funds in Pledgor's "Reserve" Account pursuant to Account Directions originated by Pledgor [except for $[    ] in Account No. [       ], identified by Secured Party in the written determination and finding, that Secured Party has determined was not "properly incurred" by the Pledgor in accordance with 2 CFR 200.343].

                              **United States Environmental Protection Agency**

as Secured Party

By:_____
    Name:
    Title:
    Date:

Exhibit A

EXHIBIT B

FORM OF ACCOUNT DIRECTION (NCIF)

**Pledgor's UEI Number: G1YAE6AFNDN4**

[Date]

Citibank, N.A.
Agency & Trust
388 Greenwich Street
New York, NY 10013
Attn.:Nerlie Delly
E-mail: cts.spag@citi.com/ CitiGGRFFinancialAgent@citi.com

VIA: CitiSFT

RE: Account Control Agreement dated November 1, 2024, among Power Forward Communities, Inc. (the "**Pledgor**"), United States Environmental Protection Agency (the "**Secured Party**"), and Citibank, N.A. (the "**Bank**")

Pursuant to Section 2 of the above referenced Account Control Agreement, the Pledgor hereby instructs the Bank to disburse a total amount of $[●] funds as per below and as per the attached upload file named xxx:

**Check applicable boxes:**

( ) **Internal Transfer within the Bank (intra-entity).**

( ) **Internal Transfer within the Bank (inter-entity).**

( ) **External Transfer outside the Bank (for Predevelopment Activities, Market-Building Activities, and/or Program Administration Activities).**

( ) **External Transfer outside the Bank (for Financial Assistance Activities).**

**If an Internal Transfer within the Bank (intra-entity), check the following applicable boxes:**

( ) **Transfer of $[●] across Pledgor's 'Budget' sub-accounts, as defined in the Grant Agreement**.

( ) **Transfer of $[●] from Pledgor's 'Program Income from Operations' account to Pledgor's 'Budget' sub-account(s), as defined in the Grant Agreement**.

( ) **Transfer of $[●] from Pledgor's 'Reserve' account to Pledgor's 'Program Income from Operations' account, as defined in the Grant Agreement.**

( ) **Transfer of $[●] from Pledgor's 'Budget' sub-account(s) or 'Program Income from Operations' account to 'Reserve' account, as defined in the Grant Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this expenditure is necessary to execute against the workplan in effect under the Grant Agreement. Financing agreements for identified Qualified Projects necessitating the transfer have been reviewed by Recipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

**If an Internal Transfer within the Bank (inter-entity), check the following applicable boxes:**

( ) **Transfer of $[●] from Pledgor's 'Budget' sub-account(s) to 'Financial Assistance Subrecipient' as defined in the Grant Agreement.**

**If an External Transfer outside the Bank (for Predevelopment Activities, Market-Building Activities, and/or Program Administration Activities), check one of the following boxes:**

( ) **Disbursement of $[●] for Predevelopment Activities as defined in the Grant Agreement.**

( ) **Disbursement of $[●] for Market-Building Activities as defined in the Grant Agreement.**

( ) **Disbursement of $[●] for Program Administration Activities as defined in the Grant Agreement.**

**If an External Transfer outside the Bank (for Financial Assistance Activities), check the following applicable boxes:**

( ) **Disbursement of $[●] from Pledgor's 'Budget' sub-account to provide Financial Assistance to Qualified Projects as defined in the Grant Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this expenditure is necessary to execute against the workplan in effect under the Grant Agreement. Financing agreements for identified Qualified Projects necessitating the transfer have been reviewed by Recipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

( ) **Disbursement of $[●] from Pledgor's 'Reserve' account to satisfy a legal obligation to a third party as defined in the Grant Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this transfer is necessary to execute against the workplan in effect under the Grant Agreement and pay a third party pursuant to a financing agreement that has been reviewed by Recipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

Capitalized terms in this instruction letter not otherwise defined shall have the same meaning given to them in the Account Control Agreement.

Signature on this Account Direction executed and delivered in electronic format (i.e. "pdf") or by other electronic means (including DocuSign) shall be deemed original signatures with all rights accruing thereto.

IN WITNESS WHEREOF, the Pledgor has caused this Account Direction to be duly executed and delivered as of the date first written above.

Pledgor:


_____

Authorized Person